**William D. & Joyce M. REIMELS, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 04–6175 AG.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 7, 2005.

Decided: Jan. 31, 2006.

Peter A. Lowy, Houston, TX, for Petitioners–Appellants.

Jonathan S. Cohen, Tax Division, Department of Justice, Washington, DC (Eileen J. O'Connor, Jonathan A. Nolet, on the brief), for Respondent–Appellee.

Before: WALKER, Chief Judge, FEINBERG and STRAUB, Circuit Judges.

FEINBERG, Circuit Judge.

Petitioners William and Joyce Reimels appeal from a decision of the United States Tax Court holding that Social Security disability benefits could not be excluded from gross income on their joint income

tax return for the 1999 tax year. The payments were made to Mr. Reimels for his inability to work due to lung cancer he developed from wartime exposure to Agent Orange. Petitioners[1] argue that the disability payments are excludable as amounts received "for personal injuries or sickness resulting from active service in the armed forces." 26 U.S.C. § 104(a)(4). We hold that Social Security disability benefits paid for an inability to work because of an injury or sickness resulting from active military service do not qualify as amounts received for that injury or sickness for purposes of Internal Revenue Code ("IRC") § 104(a)(4).

## I. BACKGROUND

Mr. Reimels is a decorated veteran of the Vietnam War. He received a Silver Star and three Bronze Stars in recognition of his actions in combat. While in Vietnam, Mr. Reimels was exposed to Agent Orange, a carcinogenic defoliant used by the United States military as an instrumentality of war. Mr. Reimels left active Army service in 1974 and accepted employment in the private sector. He stopped working in 1993 after being diagnosed with lung cancer and undergoing a pneumonectomy, in which his left lung was removed. On the basis of his lung cancer, Mr. Reimels subsequently applied for both service-connected disability compensation from the Department of Veterans Affairs ("VA") and disability benefits from the Social Security Administration ("SSA").

The Government concedes that Mr. Reimels's lung cancer resulted from combat-related exposure to Agent Orange. Indeed, the VA has found Mr. Reimels eligible for service-connected disability compensation at a 100% rating level, which indicates total disability. Mr. Reimels received disability compensation from the VA at the 100% level in 1999, and properly excluded it from his reported income that year.

Mr. Reimels also received $12,194.00 in disability benefits from the SSA during the 1999 tax year. These payments were based on Mr. Reimels's complete inability to work due to lung cancer. See 42 U.S.C. § 423. Petitioners did not include these SSA disability benefits as income on their 1999 income tax return. In February 2002, the IRS sent a notice of deficiency to petitioners proposing an increase to their income in the amount of the SSA disability benefits, as well as other adjustments not relevant here. Petitioners thereafter filed a petition in the United States Tax Court, arguing that the SSA disability benefits were excludable under 26 U.S.C. § 104(a)(4) as amounts received for an injury or sickness resulting from active military service.

The Tax Court disagreed. *Reimels v. Comm'r*, 123 T.C. 245, 2004 WL 1902973 (2004). It determined, based on precedent disallowing the application of § 104(a)(4) to Civil Service disability benefits, *Haar v. Comm'r*, 78 T.C. 864, 1982 WL 11097 (1982), aff'd, 709 F.2d 1206 (8th Cir.1983) (per curiam), that § 104(a)(4) pertains only to "pensions, annuities, or similar allowances that are received under what are essentially military disability compensation statutes." Reimels, 123 T.C. at 252. SSA disability benefits, by contrast, are "designed to prevent public dependence by protecting workers and their families against common economic hazards." Id. at 258 n. 7. The Tax Court therefore felt compelled by *Haar* to hold that SSA dis-

1. We refer to Mr. and Mrs. Reimels, in their capacity as appellants and joint taxpayers, as petitioners.

ability benefits cannot be excluded under § 104(a)(4) because they "are not designed to provide compensation for military injuries." Id. at 252. The court concluded that the SSA disability benefits should be included in petitioners' 1999 gross income to the extent otherwise provided by the IRC. Id. at 258.

The same issue is presented on appeal, namely whether SSA disability benefits paid for an inability to work due to an underlying disability resulting from active military service are excludable from income under § 104(a)(4).

## II.  DISCUSSION

■ The parties have stipulated to the facts as set out above and appeal only the Tax Court's interpretation of § 104(a)(4). We review the legal conclusions of the Tax Court de novo. *Merrill Lynch & Co. v. Comm'r*, 386 F.3d 464, 469 (2d Cir.2004).

■ Petitioners renew their argument that the SSA disability benefits qualify for exclusion as payments for Mr. Reimels's service-related injury. The IRC allows exclusion from income of certain types of compensation for injuries or sickness. See 26 U.S.C. § 104. The particular exemption that petitioners urge us to apply is found at 26 U.S.C. § 104(a)(4), which states that gross income does not include "amounts received as a pension, annuity, or similar allowance *for* personal injuries or sickness resulting from active service in the armed forces of any country." Id. (emphasis added). We appear to be the first court of appeals to address the application of this exemption to SSA disability benefits.

As a preliminary matter, we note that petitioners principally argue that the meaning of § 104(a) is plain in this context. If that were so, our inquiry would end. *United States v. Ron Pair Enters.,*

*Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Because neither party disputes that SSA disability benefits are a "pension, annuity, or similar allowance," or that Mr. Reimels's lung cancer is a "personal injur[y] or sickness resulting from active service in the armed forces," we focus on whether those payments are made *"for"* such injuries. We disagree with petitioners' contention that the SSA disability benefits are necessarily a payment for Mr. Reimels's service-connected injury, rather than a payment for Mr. Reimels's inability to work. SSA disability benefits are wage-replacement benefits awarded on the basis of the applicant's "inability to engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). This differentiates them from the service-connected disability compensation that Mr. Reimels received from the VA based on his total disability rating, see 38 U.S.C. § 1110, and which the Government treated as tax exempt.

We turn therefore to considerations other than the allegedly plain meaning of § 104(a)(4). Most significant is the "default rule of statutory interpretation that exclusions from income must be narrowly construed." *Comm'r v. Schleier*, 515 U.S. 323, 328, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (internal quotation marks omitted). This basic principle of federal income tax law is especially applicable here, where it is uncontested that the SSA disability benefits are otherwise explicitly taxed by the IRC. Section 86 of the IRC includes in a taxpayer's gross income specified amounts of monthly benefits received under title II of the Social Security Act. 26 U.S.C. § 86. Congress enacted § 86 in part because it determined that "taxing a portion of Social Security benefits will improve tax equity by treating more nearly equally all forms of retirement and other income that are designed to replace lost wages." S.Rep. No. 98–23, at 25 (1983), as reprinted in

1983 U.S.C.C.A.N. 143, 166. Congress could, of course, choose to exempt from taxation any wage-replacement payment on the basis of an underlying disability or injury. But Congress did not clearly do so in the key language of § 104(a)(4). We therefore read this language narrowly in accordance with the default rule of statutory construction, and find that SSA disability benefits are not excludable under § 104(a)(4). Cf. *United States v. Burke*, 504 U.S. 229, 248, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Souter, J., concurring in judgment) ("[A]n accession to wealth is not to be held excluded from income unless some provision of the Internal Revenue Code clearly so entails.").

A narrow construction of the exclusion is also supported by the Commissioner's treatment of Civil Service Fund payments under a longstanding revenue ruling. Revenue Ruling 77–318 holds that a taxpayer may not exclude under § 104(a)(4) civil service disability payments for a retirement occasioned by injuries resulting from active military service. Rev. Rul. 77–318, 1977–2 C.B. 45. The Commissioner reasoned that disability payments from the United States Civil Service Fund "are not paid for the personal injury or sickness resulting from active military service, but rather for the individual's total disability for service," i.e., the individual's inability to perform his or her work duties. Id. at 45. That characterization of Civil Service

Fund payments corresponds precisely to the Government's characterization in this case of disability payments made under the Social Security Act.[2]

This revenue ruling has subsequently been applied by the Tax Court in similar contexts on numerous occasions. The Tax Court first adhered to the revenue ruling in a case involving payments made under the Civil Service Retirement Act (CSRA). See *Haar v. Comm'r*, 78 T.C. 864, 1982 WL 11097 (1982). The court noted that the CSRA provided disability payments on the basis of ability to work, and "no consideration is given to whether the disease or injury arose from military service." Id. at 867. The court therefore found that the payments were not amounts received for a particular service injury. The Eighth Circuit affirmed. *Haar v. Comm'r*, 709 F.2d 1206 (8th Cir.1983) (per curiam). A long line of subsequent cases have in turn relied upon *Haar* to make a distinction between wage-replacement and injury-compensation payments for purposes of § 104(a)(4). See, e.g., *Jeanmarie v. Comm'r*, T.C. Memo. 2003–337 (Civil Service Retirement System disability benefits); *Kiourtsis v. Comm'r*, T.C. Memo. 1996–534 (New York City Employees' Retirement System disability benefits); *French v. Comm'r*, T.C. Memo. 1991–417 (Civil Service annuity payments); *Grady v. Comm'r*, T.C. Memo. 1989–55 (Civil Service Retirement and Disability Fund payments); *Tolotti v.*

**2.** The parties disagree over the proper amount of deference to afford revenue rulings, an issue that has not been addressed by this Circuit since the Supreme Court's decision in *United States v. Mead Corp.* See 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (refusing to accord *Chevron* deference to a tariff classification ruling, citing lack of congressional intent to delegate to United States Customs Service general authority to make rules with force of law). Prior to *Mead*, this Court afforded great deference to revenue rulings, which embody "the official IRS position on application of tax law to specific facts." *Weisbart v. U.S. Dep't of Treasury*, 222 F.3d 93, 98 (2d Cir.2000) (internal quotation marks omitted). Even prior to *Mead*, however, Revenue Ruling 77–318 would not be determinative of this appeal because it pertains specifically to Civil Service Fund payments. Petitioners concede, however, that at the very least we can consider the persuasiveness of its reasoning. See *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Comm'r, T.C. Memo. 1987–13 (Civil Service disability retirement payments); Lonestar v. Comm'r, T.C. Memo. 1984–80 (payment under 37 U.S.C. § 502 for absence of Navy personnel due to sickness).

We are particularly reluctant to upset what seems to be an unbroken pattern of narrow statutory interpretation given that Congress reenacted § 104(a)(4) without amendment as part of the 1986 Tax Code Revision, and has amended other § 104(a) exclusions, but not § 104(a)(4), repeatedly since. See, e.g., Victims of Terrorism Tax Relief Act of 2001, Pub.L. No. 107–134, § 113(a), 115 Stat. 2427, 2435 (2002) (codified at 26 U.S.C. § 104(a)(5)). "[P]rolonged congressional silence in response to a settled interpretation of a federal statute provides powerful support for maintaining the status quo. In statutory matters, judicial restraint strongly counsels waiting for Congress to take the initiative in modifying rules on which judges and litigants have relied." Hibbs v. Winn, 542 U.S. 88, 112, 124 S.Ct. 2276, 2292, 159 L.Ed.2d 172 (2004) (Stevens, J., concurring); cf. United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (" 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.' " (quoting Cottage Savings Ass'n v. Comm'r, 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991))).

Finally, petitioners do not present any compelling arguments for reading the exclusion of § 104(a)(4) to encompass SSA disability benefits. They attempt to support their argument by citing legislative history that is no less ambiguous than the statute itself. The precursor to the provision currently found at § 104(a)(4) was added to the Revenue Act of 1942 by the Senate finance committee. See S.Rep. No. 77–1631, at 77 (1942). That committee's report notes only that "the amendment [current § 104(a)(4)] does not apply to retirement pay not constituting amounts paid on account of personal injuries or sickness." Id. Petitioners argue that the report's use of the words "on account of" suggest that "the proper focus is whether the payment is on account of being injured, rather than on whether the amount was received specifically under a military disability plan." [3] This argument misses the point. The distinction we find relevant is whether the payments are intended to compensate for an inability to work as opposed to compensating for the injury itself. Also, petitioners fail to explain how the words "on account of" provide any more clarity than the word "for" does. Cf. Reese v. United States, 24 F.3d 228, 230 (Fed.Cir.1994) ("The language 'on account of' is not free of ambiguity . . . ." (quoting § 104(a)(2))).

In short, Mr. Reimels, a decorated veteran of the Vietnam War, presents appealing arguments. We have considered them all, but we cannot say that on the present state of the law, they justify reversing the Tax Court.

## III.  CONCLUSION

For the foregoing reasons, we hold that SSA disability benefits are not considered payments for an underlying service-connected injury within the meaning of 26 U.S.C. § 104(a)(4). The decision of the Tax Court is AFFIRMED.

---

3. Petitioners also cite a Ninth Circuit case from 1959 to assail the (irrelevant) distinction between payments received from military versus non-military sources. See Freeman v. United States, 265 F.2d 66 (9th Cir.1959).