T.C. Memo. 2021-128

UNITED STATES TAX COURT

WILLIAM HOWARD PEAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10444-20.                          Filed November 10, 2021.

William Howard Peak, pro se.

<u>Abby Moua</u> and <u>Amy Dyar Seals</u>, for respondent.

MEMORANDUM OPINION

ASHFORD, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) determined a deficiency of $3,175 in petitioner's Federal income tax for the 2017 taxable year.  The issue for decision is whether petitioner was required to report as taxable income the full amounts of distributions he received from certain pension or retirement plans.  We resolve this issue in favor of respondent.

**Served 11/10/21**

[*2]                                                    Background

The parties submitted this case to the Court for decision without trial under

Rule 122.[1]  The Court incorporates by reference the parties' stipulation of facts and

accompanying exhibits.[2]  Petitioner resided in North Carolina when he filed his

petition with the Court.

During 2017 petitioner received the following distributions from three

different pension or retirement plans:  (1) $699.57 and $1,399.14 from the

American Student Assistance Employee Pension Plan (ASAE pension plan), which

was administered by Vanguard Fiduciary Trust Co. (Vanguard); (2) $8,394.84

from the Retirement Plan for Massachusetts Higher Education (Mass. Higher Ed.

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect at all relevant times.

[2]In the stipulation of facts respondent reserved objections to the admission of two exhibits proffered by petitioner, Exhibit 12-P on grounds of relevance and Exhibit 13-P on grounds of relevance and authenticity.  Exhibit 12-P is a one-page typed document created by petitioner and titled "CONTRACT TENETS" and Exhibit 13-P is a two-page typed document titled "IRS TENETS", also created by petitioner.  Petitioner seemingly proffers these exhibits to support his contention that the notice of deficiency issued to him with respect to 2017 was unlawful because he had entered into an implied contract with the IRS by agreeing to a Notice CP12 that the IRS had sent him in 2018, approximately 1½ years before the notice of deficiency.  See infra p. 4.  As we discuss infra pp. 8-10, petitioner's contention lacks merit even if we were to admit Exhibits 12-P and 13-P into evidence over respondent's objections.  Thus, we sustain respondent's objections, and Exhibits 12-P and 13-P are not admitted into evidence.

[*3] retirement plan), which was administered by Charles Schwab Bank (Charles Schwab); and (3) $3,931.51 from the Mellon Bank Retirement Plan (Mellon retirement plan), which was administered by BNY Mellon.

For the two distributions from the ASAE pension plan, Vanguard sent to the IRS and to petitioner Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Each form reflected that the entire distribution was taxable and that the distribution was a "normal distribution". Each form reflected Federal income tax withheld.

For the distribution from the Mass. Higher Ed. retirement plan, Charles Schwab sent to the IRS and to petitioner a Form 1099-R. This form also reflected that (1) the entire distribution was taxable, (2) the distribution was a "normal distribution", and (3) Federal income tax was withheld.

For the distribution from the Mellon retirement plan, BNY Mellon sent to the IRS and to petitioner a Form 1099-R. These forms, like the other forms from Vanguard and Charles Schwab, reflected that (1) the entire distribution was taxable, (2) the distribution was a "normal distribution", and (3) Federal income tax was withheld.

Petitioner prepared and timely filed his 2017 Form 1040A, U.S. Individual Income Tax Return (2017 return). As relevant here, on line 12a of the 2017 return

[*4] petitioner reported "Pensions and annuities" of $14,425, i.e., the total amount of the distributions he received from the ASAE pension plan, the Mass. Higher Ed. retirement plan, and the Mellon retirement plan. However, despite submitting copies of the Forms 1099-R from Vanguard, Charles Schwab, and BNY Mellon with the 2017 return, on line 12b he reported $1,698 as the "Taxable amount" of those distributions.

In a Notice CP12 dated June 4, 2018, the IRS advised petitioner that there were "miscalculations" on the 2017 return and that the overpayment amount he reported on the 2017 return had changed. Specifically, the IRS advised petitioner that there were miscalculations affecting two areas of the 2017 return, (1) "Tax on Social Security Benefits" and (2) "Tax Computation", and that as a result he was due a refund of $182 (rather than a refund of $1,869 as reported on the 2017 return). The IRS also advised petitioner that no action was required on his part if he agreed with the recalculations and that he would receive the $182 refund within four to six weeks "as long as you don't owe other tax or debts we're required to collect." Petitioner did not respond to this notice, thereby agreeing to the recalculations.

Subsequently relying on the Forms 1099-R from Vanguard, Charles Schwab, and BNY Mellon, the IRS sent petitioner a notice of deficiency dated January 6,

[*5] 2020, determining that the full amounts of the four distributions were taxable.[3] Petitioner timely petitioned this Court for redetermination of the deficiency, contending that he properly reported the four distributions on the 2017 return because (1) he called the IRS help line for assistance in preparing the 2017 return and specifically followed the advice of the IRS representative on the IRS help line with respect to the reporting of the four distributions and (2) the June 4, 2018, Notice CP12 confirms that he is entitled to an "Adjusted Refund" of $182.

## Discussion

### I. Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct and the taxpayer bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, for this presumption to apply in cases (such as this one) involving

---

[3]We note that the IRS reflected the total taxable amount of the four distributions as $14,423 in the notice of deficiency, with the result that petitioner had increased taxable income of $12,725. We also note that on the basis of the Forms 1099-R from Vanguard, Charles Schwab, and BNY Mellon, and income and payment information from other third parties, the IRS determined in the notice of deficiency that petitioner was entitled to a larger total amount of Federal income tax withholding than petitioner reported on the 2017 return. Finally, we note that the income and withholding determinations reflected in the notice of deficiency were consistent with a Notice CP22A dated November 16, 2020, that the IRS sent petitioner.

**[\*6]** unreported income, "the Commissioner must introduce some substantive evidence linking the taxpayer to an alleged income-producing activity or demonstrate that the taxpayer actually received unreported income". Purple Heart Patient Ctr., Inc. v. Commissioner, T.C. Memo. 2021-38, at \*40; see also Williams v. Commissioner, 999 F.2d 760, 763-764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153. Once the Commissioner has done this, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935).

The record includes the Forms 1099-R that Vanguard, Charles Schwab, and BNY Mellon sent to the IRS and to petitioner reflecting the four distributions at issue, and petitioner has stipulated that during 2017 he received the four distributions. On the basis of this credible and undisputed evidence, we are satisfied that respondent has carried his initial burden; thus, the burden of proof shifts to petitioner to show that respondent's determination regarding the four distributions was arbitrary or erroneous.[4] See Hardy v. Commissioner, 181 F.3d

---

[4]We also note that, under sec. 6201(d), if a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in

**[\*7]** 1002, 1004-1005 (9th Cir. 1999) (holding that third-party information returns were enough for the presumption of correctness to apply), aff'g T.C. Memo. 1997-97.

Petitioner does not otherwise contend that the burden of proof should shift to respondent under section 7491(a) as to any relevant issue of fact, nor has he established that the requirements for shifting the burden of proof have been met. Accordingly, the burden of proof remains on petitioner. See sec. 7491(a)(2).

II.     Taxability of Petitioner's Distributions

Section 61(a) defines gross income as "all income from whatever source derived", unless specifically excepted or excluded. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Gross income includes pensions. Sec. 61(a)(10); sec. 1.61-11(a), Income Tax Regs. It also includes a distribution from an individual retirement account (with exceptions not applicable here). Sec. 408(d)(1).

---

addition to the information return, concerning the portion of the deficiency attributable to the income item. Petitioner has not raised any dispute with respect to the accuracy of the Forms 1099-R that Vanguard, Charles Schwab, and BNY Mellon sent to the IRS and to petitioner for 2017, nor does he contend that he has met the other requirements under sec. 6201(d). Accordingly, the burden of production does not shift to respondent under sec. 6201(d).

[*8] Petitioner does not dispute that he received the distribution amounts reflected on the Forms 1099-R that Vanguard, Charles Schwab, and BNY Mellon sent to the IRS and to petitioner for 2017, and each form reported that the distribution was a "normal distribution" and fully taxable. Accordingly, the statutory provisions require that the full amounts of the distributions be taxed unless some exception or exclusion applies.

Petitioner contends that he properly reported the four distributions on the 2017 return (and that therefore the January 6, 2020, notice of deficiency was erroneous or unlawful) for two reasons.[5] Both reasons are without merit.

Petitioner's first reason is based on the June 4, 2018, Notice CP12 that the IRS sent him. He contends that he entered into an "implied [settlement] contract" with the IRS because he "agreed" to the terms of the Notice CP12 (i.e., the corrected refund of $182) by not responding to that notice. Accordingly, petitioner

---

[5]Petitioner also seems to suggest a third reason; to wit, that when he received the notice of deficiency and since then, his financial situation has been such that he is "surviving month to month on a 'zero based budget.'" While we acknowledge and are sympathetic to petitioner's alleged financial straits, we have no authority to disregard the express and unambiguous wording of the statutory provisions. See Pulliam v. Commissioner, T.C. Memo. 1996-354, slip op. at 7 (citing Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), aff'g 80 T.C. 783 (1983)).

[*9] contends, the January 6, 2020, notice of deficiency was unlawful because the IRS breached that settlement contract when it sent him the deficiency notice.

A Notice CP12 is not, however, a settlement agreement. A settlement agreement "is in all essential characteristics a mutual contract by which each party grants to the other a concession of some rights as a consideration for those secured". Saigh v. Commissioner, 26 T.C. 171, 177 (1956); Whitesell v. Commissioner, T.C. Memo. 2017-84, at *12 (quoting Saigh v. Commissioner, 26 T.C. at 177); see also secs. 7121 and 7122.

No concession of rights or consideration was exchanged by the IRS and petitioner through the June 4, 2018, Notice CP12. A Notice CP12 is issued as a first notice to inform the taxpayer of a math error on an individual return that changes the refund amount claimed on that return. Internal Revenue Manual (IRM) pt. 21.3.1.5.8(1) (Sept. 12, 2017); see also IRM pt. 3.14.1.6.12 (Jan. 1, 2017). The June 4, 2018, Notice CP12 that the IRS sent petitioner did just that: It advised him that there were math errors on the 2017 return that changed the overpayment amount he reported on that return; the math errors identified were "Tax on Social Security Benefits" and "Tax Computation". The notice also advised petitioner that no action was required on his part so long as he agreed to the mathematical recalculations, and by sending petitioner that notice the IRS did

**[\*10]** not waive its right to collect other tax or debts of petitioner. Indeed, the notice explicitly states that if he agreed with the changes made to the 2017 return, he would receive a corrected refund of $182 within four to six weeks "as long as you don't owe other tax or debts we're required to collect." Pursuant to section 6501(a), the IRS is authorized to assess any additional Federal income tax with respect to a filed Federal income tax return within three years after the return is filed. As the IRS sent petitioner the January 6, 2020, notice of deficiency well within that three-year period of limitations, it was not unlawful for the IRS to do so after sending petitioner the June 4, 2018, Notice CP12.

Petitioner's second reason is based on alleged advice he received in preparing the 2017 return. Petitioner contends that he called the IRS help line to get assistance in preparing the 2017 return and was instructed by the IRS representative on the IRS help line to report the four distributions the way he did on the 2017 return.

This Court has held that "although it is unfortunate that * * * [a taxpayer] may have received incorrect legal advice from an IRS employee, that advice does not have the force of law and cannot bind * * * [the IRS] or this Court." Richmond v. Commissioner, T.C. Memo. 2009-207, slip op. at 7. "It is the statute which governs the determination of * * * [a taxpayer's] substantive tax liability,

**[*11]** and the statements of IRS representatives, while understandably nettlesome to * * * [a taxpayer], do not alter this rule." Atkin v. Commissioner, T.C. Memo. 2008-93, slip op. at 6-7. Indeed, "'[t]he authoritative sources of Federal tax law are in the statutes, regulations, and judicial decisions', not in informal advice or publications." Richmond v. Commissioner, slip op. at 7 (quoting Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), aff'd without published opinion, 614 F.2d 1294 (2d Cir. 1979)). Thus, any advice petitioner may have received from the IRS before filing the 2017 return does not have the force of law and cannot serve as a legal basis to exclude from taxable income any portions of the four distributions he received during 2017.[6]

Accordingly, we sustain respondent's determination with respect to the four distributions petitioner received during 2017.

---

[6]We also note that even if we assume petitioner had relied on representations of the IRS, the IRS is not estopped from correcting errors of law (as alleged here). See Demirjian v. Commissioner, 54 T.C. 1691, 1701 (1970) (citing Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957)), aff'd, 457 F.2d 1 (3d Cir. 1972); see also Forrest v. Commissioner, T.C. Memo. 1978-239, 1978 Tax Ct. Memo LEXIS 275, at *19-*20 ("The law is clear that a taxpayer's reliance on mistaken legal interpretations given to him by agents of * * * [the Commissioner] does not estop * * * [the Commissioner] from making a correct determination of that taxpayer's tax liability." (citing Demirjian v. Commissioner, 54 T.C. at 1701)).

**[*12]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.